## THE COUNTY OF COOK

### v.

### HERMAN SCHAFFNER ET AL.

*Municipal Corporations—County Warrants—Suit on.*

1. The county of Cook is a purely municipal and political body, possessing only such limited powers as arise from legislative grant.

2. A county is not bound to file an affidavit in conformity with Sec. 34 of the Practice Act in order to require proof by the holders of county warrants of the lawful execution thereof.

3. It is the duty of such holder before bringing suit to present the orders to the county treasurer for payment, in the absence of facts which might have excused presentation.

[Opinion filed January 7, 1893.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding.

Messrs. JOHN A. HENRY and EDWARD J. JUDD, for appellant.

Messrs. NEWMAN & NORTHRUP, for appellees.

MR. JUSTICE SHEPARD. Filed with the declaration in this case, consisting of the common counts, were copies of the three instruments upon which the cause of action was based, aggregating the sum of $1,147.40, dated, respectively, August 2, 5, and 10, 1886, payable to the order of N. Barsaloux, and assigned by him, by indorsement, to the appellees.

The three instruments and the assignments were alike, except as to number, date, amount, and the statement of what they were issued for, viz., furniture for the hospital, infirmary, and court house, respectively.

A copy of one, with its assignment, will serve to show all:

"State of Illinois.

No. 12,438.    Cook County Order.    $228.00.

Chicago, August 2, 1886.

The treasurer of Cook County will pay N. Barsaloux, or order, two hundred twenty-eight 00-100 dollars, for furniture, hospital.

M. W. RYAN, Clerk.

Countersigned and registered.

W. C. SEIPP, Treasurer.

(Endorsed on the back:)

Pay to the order of Herman Schaffner & Co.

N. BARSALOUX."

At the trial, Mr. Schaffner, one of the plaintiffs, testified that he was a member of the firm of Herman Schaffner & Co., doing business in Chicago since 1878, and during the year 1886; that said firm owned the three papers referred to; that the firm "bought them in 1886 of Mr. Barsaloux, and paid the market price for them. I have forgotten the exact amount. They were assigned to us in the regular course of business."

It was admitted by the defendant that at the date of the instruments M. W. Ryan was county clerk of Cook County, and W. C. Seipp was county treasurer of Cook County.

Thereupon the plaintiffs offered in evidence the three instruments. Counsel for the defendant objected to the instruments for the following reasons: That no execution of the instruments was proved; that the instruments were not admissible under the common counts; that the instruments were not assignable; that it was necessary as a condition precedent, to show that there was money in the appropriate fund in the treasury; and a general objection.

Each of said objections was specifically overruled by the court, and exception to each ruling duly preserved, and the instruments were admitted in evidence. Thereupon the plaintiffs rested.

On the part of the defense it was proven by a bookkeeper in the county treasurer's office, who had been in the office for ten years, and was head bookkeeper there in 1886, that a book then produced was the register of county warrants,

or orders, kept in the treasurer's office in 1886; that such register showed the numbers, warrants, name of person to whom issued, purpose for which issued, date when countersigned by the treasurer, and in case of paid warrants, showed the date of payment.

Thereupon, counsel "for defendant offered a portion of said register, from May 1, 1886, to August 10, 1886, which showed that there were registered prior to August 2, 1886, but not marked paid unless the mark of payment was at a later date than August 10, 1886, warrants, the aggregate amount of which exceeded $200,000, and offered to show by the witness the register of warrants and other books from treasurer's office; that at the date of countersigning and registering of the warrants in evidence there was in the hands of the treasurer of Cook County, and available for all general county purposes, the sum of $13,000, and to show that there were outstanding and countersigned and registered by the treasurer and unpaid at said time other county warrants aggregating more than the sum of $300,000."

It was agreed that such testimony would be considered offered and produced.

Which county register of warrants and the offer of evidence was objected to by plaintiffs, and objection sustained by court.

The defendant then offered to prove that the name of W. C. Seipp, which appears upon the three instruments, was not the signature or handwriting of William C. Seipp, to which offer objection was made and sustained.

This was in substance all the evidence, and at its conclusion, counsel for the defendant offered a written instruction for the court to give the jury to find the issues for the defendant, which was refused, and the jury, without instructions from the court, rendered a verdi[  ]in favor of the plaintiffs, for the aggregate amount of said orders, and judgment upon the verdict was duly entered.

It is contended in this court that the judgment of the Circuit Court should be reversed, because:

First. There was no evidence of the execution of the warrants.

Second.   There was no evidence of a demand for payment of the warrants having been made upon the treasurer, and his refusal to pay them.

Third.   The court erred in excluding the offer by defendant to prove that there was no money in the county treasury unappropriated and applicable to the payment of these particular warrants.

The first point calls for a determination of the application of Section 34 of the Practice Act, to municipal corporations:

"No person shall be permitted to deny, on trial, the execution or assignment of any instrument in writing, whether sealed or not, upon which any action may have been brought, or which shall be pleaded or set up by way of defense or set-off, or is admissible under the pleadings when a copy is filed, unless the person so denying the same shall, if defendant, verify his plea by affidavit, and if plaintiff shall file his affidavit, denying the execution or assignment of such instrument. *Provided*, if the party making such denial be not the party alleged to have executed or assigned such instrument, the denial may be made on the information and belief of such party."

It is provided in Chap. 131, R. S., relating to the Construction of Statutes, as follows:

Sec. 1.   "That in the construction of all statutes now in force, or which may hereafter be enacted, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the same statute, that is to say:

\*        \*        \*        ..        \*        \*        \*

Fifth.   The word 'person' or 'persons,' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate, as well as individuals."

Sec. 22, Chap. 34, R. S., entitled Counties, provides that:

"Each county which has heretofore been, or may hereafter be established in this State, \* \* \* shall be a body politic and corporate."

The three provisions of the statutes quoted above, would seem to make it the duty of the court to hold that the appellant, county of Cook, is included within the terms of Sec. 34, unless it "would be inconsistent with the manifest intent of the legislature," to so hold.

It is because it would otherwise be opposed to a wise public policy that it has been held a municipal corporation, the city of Chicago, could not be subjected to the process of execution against its property; and this was so held notwithstanding the defining clause "fifth," above quoted, was as specially pointed to the word "person" employed in Sec. 4, Chap. 77, entitled Judgments and Executions, as it can be to the same word in Sec. 34 of the Practice Act. Chicago v. Hasley, 25 Ill. 595; Merwin v. Chicago, 45 Ill. 133.

On the same ground that it was in opposition to public policy, it was held in the last cited case, that a municipal corporation could not be garnished; and for the same reason it has been held (1 Scam. 67, 11 Ill. 170, 31 Ill. 529), that counties are not liable for interest in the absence of an express agreement to pay the same, notwithstanding the statute giving interest to creditors after moneys shall become due. We refer to these instances of exemptions allowed to purely municipal corporations from the effect of laws applicable to individuals and private corporations, to show that considerations of public policy are a controlling feature in determining their duties, obligations and rights.

As was said by Mr. Justice Breese, in City of Chicago v. Hasley, *supra*, in referring to the several provisions of the statutes already quoted: "This legislation can have full effect by linking the words, bodies politic and corporate, to private corporations, or to such public corporations as are not wholly municipal, and this we think is the restricted sense in which the legislature intended they should be used and applied. They never could have intended they should embrace an incorporated city or town, or any such municipal and political corporations."

The appellant, county of Cook, is a purely municipal and political body, possessing only such limited powers as arise

from legislative grant. It consists of all the inhabitants of the county, as corporators, and of certain officers, chosen for stated terms, who exercise the powers of the corporation. The duties and powers of the officers are, also, prescribed by statute, and every person dealing with them may know, if he chooses, the precise limits of the authority of such officers to bind the corporate body.

The presumptions that may exist in favor of the acts of an individual, or of those of an officer of a private corporation, or one not "wholly municipal," may not be indulged in when one comes to treat with a corporation exclusively political and municipal, existing only as a creature of the statute, and governed only by officers who, themselves, have no powers except such as are created by statute. Such a corporation is bound only by the acts of its officers when they keep within the limits of their prescribed authority. It is further unlike an individual, or a private corporation, in that it may set up as a defense its own want of power under the statute to enter into a contract or perform an act to which its officers may have pledged it, or a defense of fraud, or want of consideration, and these defenses would continue even after assignment to third persons.

The mere dangerousness of denying to municipal corporations the exercise of numerous forms of defense not permitted to individuals or private corporations, as against the excessive acts of its agents or officers, is a sufficient ground for not appying to that class of corporations the presumptions that may with safety be held to be applicable to others.

And, on the other hand, there is no hardship to those who may have dealings with municipal corporations in thus yielding to them what may seem like favor, because it is within the ready power of all persons having such dealings, to learn the statutes and to inspect the public records, and ascertain therefrom all facts necessary to a complete understanding of the legality of every contract or act to which the officers of a municipal corporation may seek to commit it.

If, therefore, the public good, or what in this connection is the same thing, public policy, will permit the assertion of

County of Cook v. Schaffner.

a substantial defense by a municipal corporation against the excessive acts of its agents, in cases where an individual or private corporation might be estopped from asserting a similar defense, why should it be precluded from what is a mere method of asserting that defense? Sec. 34, *supra*, neither destroys nor creates a right. It is merely a rule of evidence. Without the aid of that section no suit could be maintained upon the orders in question, without proof of their lawful execution; and, as it seems to us, every consideration that has induced the courts of this State to hold that municipal corporations were not in the mind of the legislature in the various instances referred to, prompts us to the conclusion that the appellant was not bound to file the affidavit provided for by Sec. 34, in order to require proof by the appellee of the lawful execution of the warrants offered in evidence.

Public policy demands that the strictest rules should be applied in the conduct of all municipal affairs. Where one set of officers succeeds another with annual frequency, and the temptation to haste and inconsiderateness is an inevitable result, the duty and right of each succeeding board of officials to most critically examine into the unperformed contracts of its predecessor should be encouraged; and the same policy should, and, as we hold, does permit the board of officials to whose hands the affairs of the county may, at the time, be intrusted, to insist that one who seeks a recovery at law against the county shall prove the authority upon which his claim is based, without requiring the county to deny such authority, in the first instance, by an affidavit that no one has either the express authority, or perhaps the requisite knowledge or information, to make.

The term of office of county officers is very short. There is no one of them whose duty requires him to make the affidavit, and no one whose interest would prompt it; and it is very probable that after the lapse of more than five years from the time of the commencement of this suit to the time of the trial, there remained no one in office who could have honestly made the required affidavit. These

circumstances do not unite in the conduct of the affairs of individuals or of private corporations, and furnish a further reason for distinguishing the duty of a municipal corporation from that of private persons and corporations.

We, have been referred to the cases of Clark v. Des Moines, 19 Iowa, 199, and Clark v. Polk County, 19 Iowa, 248.

There may be distinguishable features in those cases from the one at bar, but we will not stop to consider them. It is sufficient that we regard the principle involved as clearly within the limits of the public policy prevailing in Illinois, as declared by its courts.

We come next to the second point urged as a ground for reversal, viz., that no cause of action arose upon the orders or warrants until after demand on the treasurer upon whom they were drawn. No other evidence than the warrants themselves was introduced in evidence in support of the action, and no demand of payment was shown.

In the nature of things, the drawing of orders or warrants on the county treasurer is the only possible method of making money payments by the county. The treasurer is the lawful custodian of the funds of the county, and in a certain sense, the issuing of orders upon him for county moneys payable to another is the drawing by the county of an order on itself. It did not constitute a payment by the county when such orders were issued, and the acceptance of the orders would not preclude the one in whose favor they were drawn from maintaining an action against the county upon the original consideration, upon a surrender of the orders. Having, however, accepted the warrants, it was the duty of the holder of them, before bringing suit, to pursue his implied engagement to conform to the necessarily established usage, and present the orders to the treasurer for payment, in the absence of facts which might have excused presentation.

It is said in 1 Dillon's Municipal Corporations, Sec. 501, " A creditor of a town is *not bound to receive an order* on the treasurer, but may sue upon his original cause of action. But if he does receive such an order. he is charged with the duty of presenting it to the treasurer upon whom it is drawn,

or of alleging facts which excuse presentment, before he can maintain an action upon it," and a large number of cases are cited in support of the text.

In County of Pike v. Hosford, 11 Ill. 170, it is said on page 175: "The funds of a county are required to be kept in the county treasury, and are only to be paid out on the orders of the commissioners' court. * * * The creditor must procure an order from the court and present it to the treasurer for payment. This is the only mode by which he is to receive payment of his debt."

In City of Pekin v. Reynolds, 31 Ill. 529, the court said: "There was no averment of a demand upon the city treasurer for payment of these coupons, in this declaration. * * * Until a demand is made, such a body is not in default. They are not like individuals, bound to seek their creditors to make payment of their indebtedness."

And this was said in a case where the coupons in question were made payable in express terms, at a particular bank, where they had been presented and payment refused.

In People v. The County of Tazewell, 22 Ill. 147, it was held: "States, counties, and (municipal) corporations created for public convenience only, are not required to seek their creditors to discharge their indebtedness, but when payment is desired, the demand should be made at their treasury. That is the only place at which payment can be legally insisted upon, and it is the only place where the treasurer can legally have the public funds with which he is intrusted."

Authorities in other States, and perhaps others in Illinois, could be multiplied in support of the proposition that no action can be sustained upon orders like the ones in question, until after presentation to, and demand of payment upon, the treasurer.

And the proposition rests upon sound reason. A county treasurer is a public officer under the law, with prescribed duties. His duties require him to be at the treasury, and for him to hunt up the creditors of the county and discharge the county's indebtedness to them wherever they

might be found, would require the employment of many agents at public cost, and at great risk to the public treasure. It must be held there is an implied engagement on the part of every creditor of the county to make presentation and demand at the treasury for the payment of county orders or warrants held by him, before he shall be entitled to bring suit against the county, because of the public convenience and necessity requiring it.

We do not think anything said by the court in City of Springfield v. Hickox, 2 Gilm. 241, can be considered as holding any contrary doctrine, for, although the city order in question was not presented to the treasurer for payment until six days after the commencement of the suit, it was proven by the treasurer that there had not been for some time previous any funds in the treasury, either appropriated or otherwise; but if it shall be so considered, we think the subsequent utterances of the court should control.

Neither do we regard the statement in The People ex rel. v. Johnson, 100 Ill., occurring on page 545, where, in speaking of the general qualities or attributes of county orders, the writer of the opinion said, "As soon as countersigned and registered by the treasurer they are at once due, without presentment for or demand of payment," as contrary authority. The question of demand was not involved in that case, and the language quoted was employed argumentatively only, on the question of the negotiability of such orders.

The only remaining question is upon the alleged error in excluding the offer 'by appellant to prove that there was no money in the treasury unappropriated and applicable to the payment of the warrants upon which the suit was based, for that was in effect what the offer consisted of.

Had the rejected evidence been admitted, and had it established the facts offered to be proved, then such a condition of things would have arisen as the stipulated facts showed did exist in the case of The County of Cook v. Lowe, 23 Ill. App. 649, viz.:

"That the warrants sued on were issued when the conditions required by the statute did not exist."

The statute is imperative, that warrants payable on demand may be drawn on the treasurer only when, at the time of the drawing and issuing of such warrants, there shall be sufficient money in the appropriate fund in the treasury to pay them. Sec. 1, Chap. 146a, R. S., entitled " Warrants."

The reasoning of the opinion in The County of Cook v. Lowe is as applicable to this case, with the offered evidence excluded, as it was to the case then decided, and we will only refer to that case.

For the reasons given, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*