(No. 5313— )

CHISM, INC., A DELAWARE CORPORATION, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed August 16, 1967.*

DRACH, TERRELL and DEFFENBAUGH, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PEZMAN, J.

This claim arises out of a contract, dated October 1, 1964, between claimant and respondent, by and through the Director of the Department of Public Works and Buildings, for repairs to a bridge over the Illinois River.

The bid sheet or contract schedule of prices, which was the last page of the specifications, sets forth the items to be bid upon, and also the quantities as specified by the State of Illinois. One of the items was a steel grid floor, which was to be bid upon at a unit price per square foot. Claimant bid a unit price of $7.15 per square foot, and, using the quantity of 7,110 square feet, as specified in the contract, arrived at a total bid for that item of $50,836.50.

Another item on the bid sheet was lightweight concrete, which was to be bid at a unit price per cubic yard. Claimant bid a unit price of $500.00 per cubic yard, and, using the quantity of 11.30 cubic yards, as specified in the contract arrived at a total bid of $5,650.00 for this item.

The following special provisions of the contract are pertinent to the question presented by this case:

"*Steel Grid Floor 3*": This item consists of furnishing, fabricating, transporting and erecting in place the concrete filled steel grid floor, including trim bars, galvanized form pans, and shop and field welding.

"The steel floor shall be a Gruelich, 3-inch concrete filled "Arma-Deck" type, or equal. The floor shall be as shown on the plans, and shall meet the requirements for design of steel grid floors as specified in Division I of the American Association of State Highway Officials Standard Specifications for Highway Bridges, Eighth Edition.

"The concrete used in filling the steel grid floor shall be a light-weight structural concrete as specified elsewhere in these special provisions.

"Payment for steel grid floor shall include the furnishing of all materials, equipment, tools, and labor necessary for the satisfactory completion of the work. Payment will be made at the contract unit price per square foot of Steel Grid Floor 3" complete in place.

"Lightweight Structural Concrete: This work consists of the furnishing, transporting, mixing, placing, curing and finishing of lightweight structural concrete in accordance with the applicable portions of Section 52 of the Standard Specifications and the following Special Provisions.

"Basis of Payment: This work will be paid for at the contract unit price per cubic yard, measured as above specified, for lightweight structural concrete."

The completion of the project required the use of 63.50 cubic yards of lightweight structural concrete in addition to the 11.30 cubic yards specified in the contract. Claimant brings this action to recover $31,750.00 for the additional 63.50 cubic yards of lightweight structural concrete used to fill the 3" steel grid floor at the contract bid price of $500.00 per cubic yard.

Respondent contends that claimant is limited to the amount specified by the contract, and that the Constitution of the State of Illinois prohibits granting extra compensation to any contractor after service has been ren-

dered or a contract made. Respondent contends that the lightweight structural concrete necessary to the satisfactory completion of the steel grid floor is embraced within the term "all materials" appearing in that provision of the contract, which recites that:

"Payment for steel grid floor shall include the furnishing of all materials, equipment, tools and labor necessary for the satisfactory completion of the work."

Two witnesses appeared for claimant. The first witness was Harry J. Alton, Sr., an employee of the State of Illinois, Division of Highways for forty years, and who, from 1965 to his retirement on October 19, 1966, was the Engineer of Design for the Illinois Division of Highways. Mr. Alton testified that in his opinion claimant should be paid for the lightweight concrete. In his opinion the concrete was to be paid for separately, and was not to be considered part of the steel grid floor or incidental to the steel grid floor. Mr. Alton stated that the term "concrete filled steel grid floor" refers to a particular type of steel grid floor, there also being a type of flooring referred to as "open deck steel grid floor". Mr. Alton also testified that it would have been impossible to fill the grid deck with concrete, and then put it in position.

The other witness for claimant was Don M. Chism, President of Chism, Inc. Mr. Chism testified that it was not possible to prefabricate a steel grid floor, fill it with concrete, and install it in place. He testified that the steel grid floor must first be installed in place, and then filled with concrete. He testified that he could not alter the quantity of lightweight structural concrete specified in the contract, and that it frequently occurs that the quantities set by the State are at variance with the quantities necessary to complete the job.

Section 2.2 of the Standard Specifications for Road and Bridge Construction, commonly known as the Blue Book, recites that the quantities are only placed in the schedule of prices for comparison of bids, and are not necessarily the actual quantities to be used. Section 9.3 of the Blue Book provides that, if unit price bids are requested by the State, the contractor is to be paid for actual amounts used whether it be more or less than the total estimated by the State on the schedule of prices.

The testimony of Mr. Alton and Mr. Chism has not been refuted or contradicted by the State. It is evident that the terms of the contract are ambiguous with regard to the provisions relating to the ''concrete filled steel grid flooring''. It is a settled law of construction that a contract, which is ambiguous, will be construed most strongly against the party who prepared the contract, as such party is responsible for the ambiguity. *Ekstrand* vs. *Severin,* 32 Ill. App. 693, and *Finch* vs. *McIntosh,* 171 Ill. App. 120. In this case respondent was entirely responsible for the preparation of the contract.

It appears to the Court that the provisions in regard to the steel grid deck and the lightweight concrete are completely separate provisions in the special provisions section of the contract.

It is the opinion of this Court, based upon the unrefuted and uncontradicted testimony of Mr. Alton and Mr. Chism, the provisions of the contract, and the applicable sections of the Blue Book, that the additional 63.50 cubic yards of lightweight concrete necessary for the satisfactory completion of the contract were not incidental to the steel grid deck, and that claimant is entitled to be paid for the additional 63.50 cubic yards of lightweight concrete used at the unit price of $500.00

per cubic yard, or a total of $31,750.00. Respondent's contention that the contract was for a sum certain and that to pay claimant additional compensation would violate the Constitution of the State of Illinois is not supported by the evidence in this case. An examination of the contract and particularly the bid sheet or contract schedule indicates that the contract was one based on unit price specifications and not one for a sum certain. As stated above, the Blue Book provides that, if unit prices are requested, as they were in this contract, the contractor is to be paid for actual amounts used whether it be more or less than the total estimated by the State on the schedule of prices. Claimant used an additional 63.50 cubic yards of lightweight concrete, and should accordingly be compensated therefor.

Claimant's claim is hereby allowed in the sum of $31,750.00.